(52 South. 474.)

No. 17,981.

SAINT v. MARTEL.

(April 25, 1910. Rehearing Denied May 24, 1910.)

(Syllabus by the Court.)

ABATEMENT AND REVIVAL (§ 4*)—ANOTHER ACTION PENDING.

An exception of lis pendens has no legal basis to rest on, when predicated upon the pendency of a suit in the same court as that in which it is pleaded. The prohibition is against the bringing of the same cause "before two separate courts" of "concurrent jurisdiction." Code Prac. arts. 94, 335.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 25–38; Dec. Dig. § 4.*]

Appeal from Twenty-Third Judicial District Court, Parish of Saint Mary; Charles L. Wise, Judge ad hoc.

Action by Percy Saint against J. Sully Martel. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

See, also, 123 La. 815, 49 South. 582.

Foster, Milling, Brian, & Saal and Hall & Monroe, for appellant. Edward N. Pugh, Borah & Himel, Farrar Jonas, and Goldsborough & Goldberg, for appellee.

Statement of the Case.

MONROE, J. Plaintiff has appealed from a judgment maintaining defendant's exception of lis pendens. It appears that in April, 1907, he brought a suit in the same court against the same defendant, in which he alleged that he had purchased from one Brown, who had acquired from defendant, an undivided one-tenth interest in defendant's one-half of one-fifth interest in the Jennings oil field, but that defendant remained in possession and refused to deliver to him the interest so acquired; that the interest so held by defendant in part of said field, to wit, the Arnaudet tract, had produced, and was producing, great quantities of oil, and that defendant had received as his share of the proceeds thereof $152,600, of which petitioner was entitled to one-tenth, less $3,000 paid by defendant to Brown; that the interest so held by defendant also included a certificate for 10,000 shares of stock of the Houssiere-Latreille Oil Company, and 6,666⅔ shares of the same stock, subsequently acquired. And he prayed for judgment for $15,260, with interest (less a credit of $3,000), decreeing him to be the owner of one-tenth of all the interest of the defendant in the Jennings oil field and putting him in possession thereof, and ordering defendant to issue to him 6.666⅔ shares of the stock of the Houssiere-Latreille Oil Company. To the suit so filed various exceptions and defenses were pleaded, and, among others, that plaintiff had acquired a litigious right, which, having been sustained, plaintiff appealed to this court, where in June, 1908, the judgment appealed from was reversed, and the case remanded to be further proceeded with. Saint v. Martel, 122 La. 93, 47 South. 413. Thereafter, on March 22,

1909, the case having been called "for the purpose of having the same fixed for trial," defendant moved that it be dismissed, on the ground that it had been compromised, which motion on April 5th was referred to the merits, where it was subsequently considered as part of the defense, the result being a judgment in favor of plaintiff, decreeing him to be the owner of one-tenth of all the interest of defendant in the Jennings oil field ("being 1/10 of whatever interest the said Martel has in sections 47, 46, 41, 38 & 52, in the said field, in the parish of Acadia") condemning defendant to pay him $15,715.42 (less $3,000 paid Brown September 4, 1906), with interest, reserving to defendant the right to deduct in the next settlement any credits to which he may be entitled, and rejecting plaintiff's demand for the stock of the Houssiere-Latreille Company. The judgment thus referred to was rendered on September 4, 1909, and, defendant having appealed, the transcript was lodged in this court on October 30, 1909. In the meanwhile, on October 4, 1909, plaintiff instituted the present suit, in which, after restating the title upon which he sues, and some other matters, he further alleges that after the rendition of a certain judgment by this court in the suit entitled J. Sully Martel et al. v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 South. 253, the other parties in interest recognized the right of the Messrs. Caffery and Martel to an undivided one-fifth interest in the land constituting the Jennings oil field and in the oil produced, and to be produced, therefrom, and that since then the said oil field "has been operated in co-ownership, four-fifths represented by the Jennings-Heywood Oil Syndicate, or its assigns, and one-fifth by J. Sully Martel and D. Caffery, Jr., they representing the co-owners of said one-fifth and receiving the fruits thereof"; that, as the owner, he is entitled to one-tenth of one-half of said fruits (after deduction of expenses) and of all the machinery, pumps, tanks, and apparatus placed on the property by said syndicate; that Caffery & Martel have received all the oil and the proceeds of all the oil due to the owners of said one-fifth interest, amounting in value to at least $1,557,319.62; that they have in their possession personal and real property belonging to said owners to the value of at least $100,000; that there was a partial division of the profits between them (he was informed) whereby Martel received $157,154.-20; that on April 23, 1907, he sued Martel for (his share of) the amount which he had received up to that time, and for recognition of his interest in the property and appurtenances thereto attached, and obtained judgment for $15,715.42 (less $3,000) with interest; that since the filing of the last-amended petition in that suit Caffery & Martel have continued to operate and administer said one-fifth interest and have received all the profits therefrom, and that Martel has received in partial settlement $370,000; that, in addition to the amount which defendant has collected from the firm of Caffery & Martel, one-tenth of which is due to petitioner, Martel is further indebted for "the difference between the sums so collected and the one-tenth of the one-half of the $1,557,319.62, the proceeds, of the results of the operation of the oil field by the said Caffery & Martel," less expenses; and "that petitioner has a one-twentieth interest in the bills and notes receivable, cash on one hand, and on the other property held by the said Caffery & Martel"; that petitioner is entitled to a full and complete account from the defendant, and for a judgment for the amount shown to be due him on such accounting, "less the amount for which judgment has already been rendered, as aforesaid"; that he is not willing that defendant should continue to receive from Caffery & Martel the oil, or the proceeds of the oil, which should be coming to him, and that defendant should be enjoined from receiving the

same or any other property to which petitioner is entitled, etc. He prays for judgment ordering defendant to account for all oil, money, or other things of value which he has received from Caffery & Martel, or from any other source, in which he, petitioner, owns a one-tenth interest; that he be ordered to account for the one-twentieth of all oil, money, or other things of value which are now in the hands of Caffery & Martel, the one-twentieth of which belongs to petitioner; that he have judgment for whatever amount be found to be due him on such accounting, which is at least $37,000, etc.

## Opinion.

As the law upon which defendant must rely for the support of his plea is to be found in the Code of Practice, we think it advisable to consult that authority. Under the title "Where Actions May Be Brought and in What Manner," and the subtitle, "Judges: Their Jurisdiction; How Their Competency Is Regulated," we find the following:

"Art. 4. The same cause can not be brought before two separate courts, though they be possessed of concurrent jurisdiction, except by discontinuing the suit first brought, before the answer is filed. Hence, if the same suit be brought before two separate courts, having concurrent jurisdiction, the judge before whom the action was brought first, shall sustain his jurisdiction, and the defendant shall be entitled to have the cause dismissed by the other court, and to recover costs."

Under the title, "Of Exceptions and Defense," and the subtitle, "Of Declinatory Exceptions," we find:

"Art. 334. Declinatory exceptions do not tend to defeat the demand, but only to decline the jurisdiction of the Judge before whom it was brought. In such cases, defendant contends that he is not bound to plead before the court in which the action is brought.

"Art. 335. There are two kinds of declinatory exceptions.

"(1) When the exception is taken to the competency of the judge. * * *

"(2) When it arises from the fact of another suit being pending between the same parties, for the same object, and growing out of the same cause of action, before another court of concurrent jurisdiction."

From which it appears that, in the contemplation of the lawmakers, the bringing of a multiplicity of suits against the same person upon the same cause of action and for the same object is objectionable only when the suits are brought in different courts of concurrent jurisdiction.

If it had been the intention to legislate against the bringing of such suits in the same court, it is not to be supposed that language would have been used which, ex vi termini, limits the prohibition to the bringing of them in "separate courts," and which declares that one may except to the jurisdiction of a court when he has already been sued by the same plaintiff for the same thing on the same cause of action in "another court of concurrent jurisdiction," but does not declare that he may plead such exception when so sued in the same court in which the first suit was brought. The distinction is obvious and the reason for it is not less so; for, if a multiplicity of suits by and against the same person arising from the same cause of action, and for the same thing, could be brought in as many different courts, the defendant would be unnecessarily harrassed, and there would result a multiplicity of judgments, which might either conflict with each other, or, each being for the same thing, lead to confusion, and, perhaps, injustice in their execution; whereas, such suits brought in the same court may be cumulated, but, even if that be not done, it is not likely that the same judge will make rulings which conflict with each other, or that he will twice condemn a litigant for the same thing. Counsel for defendant cites the following from 2 Hennen's Digest, p. 1166, No. 1, to wit:

"When another action is pending, before the same tribunal, or one of concurrent jurisdiction, between the same parties, for the same object and the same cause of action, the cause will be dismissed on the exception of lis pendens. But the exception is declinatory and must be pleaded in limine litis. Code Prac. art. 335, § 2; 9 Mart. (O. S.) 493; 5 La. 116; 9 La. 386;

17 La. 498; 3 Rob. 92, 108; 1 La. Ann. 46; 2 La. Ann. 839; 4 La. Ann. 520; 5 La. Ann. 494."

We have already quoted Code Prac. art. 335, § 2, and have seen that it refers in explicit terms to a case where there is a suit already pending and another is brought "before another court of concurrent jurisdiction." It is therefore in direct conflict with the text of the digest in support of which it is cited. As to the other authorities included in the citation, we have carefully examined them, and have found that the particular question here at issue was not raised or considered in either of them. It is true that in Dick et al. v. Gilmer, Adm'r, 4 La. Ann. 520, the syllabus reads:

"When another action is pending before the same tribunal, between the same parties, for the same object, and growing out of the same cause of action, the case must be dismissed, if the exception litis pendentis be pleaded. Civ. Code, art. 335."

But there is absolutely nothing in the opinion (which is very short) from which it would be possible to say whether the suit upon which the exception was based and that in which it was pleaded were pending in the same court or in different courts, and our impression is that the justices did not in those days prepare the syllabi of their opinions, but left that work to the reporter. On the other hand, in Bischoff v. Theurer, 8 La. Ann. 16, the court said:

"The defendant, being sued upon the three promissory notes made by him, payable to his own order, pleaded, in limine litis, as an exception, the pendency of another suit, between the same parties and for the same cause of action, in a court of concurrent jurisdiction, which plea was overruled by the court."

And, after considering the facts, the ruling complained of was reversed and the exception maintained, on the ground that a judgment in the suit relied on as the basis of the exception would constitute the thing adjudged in the case before the court, the case of Dick et al. v. Gilmer, Adm'r, 4 La. Ann. 520, supra, being cited as authority for that view. It was not,

however, intimated that defendant committed any error in pleading that the suit first instituted was pending in a court of concurrent jurisdiction, or that the fact that it was pending in such court was unnecessary to the maintenance of the plea. In Bogart v. Rils, 8 La. Ann. 55, it appeared that one Blanks brought a petitory action against Marionneaux and others; that, the suit as to Marionneaux being still pending, the litigants sold their interests to Bogart & Rils, respectively, and that Bogart brought suit, in the same court, against Rils, enjoining him from committing waste upon the land in controversy during the pendency of said suit, and sequestering certain timber which the defendant had cut down, whereupon Rils pleaded the exception of lis pendens, which the court disposed of as follows:

"It will simplify the case to consider it as one between the original contestants, Blanks and Marionneaux, and in so doing (which is most favorable to the defendant) we are of the opinion that during the pendency of the suit plaintiff had a right to the conservatory remedies asked for; indeed, from the nature of the sequestration, it could only arise during the pendency of the suit. It is not, strictly speaking, a new action, rather a branch of the old, and ought to have been cumulated with it. The class of exception which prohibits two suits being brought before different tribunals, for the same cause of action, the parties being the same (see Code Prac. art. 335, § 2), was obviously framed to shield defendants from the harrassing effects of a multiplicity of suits, before different tribunals, for the same cause of action, by the same plaintiffs. But we cannot understand it to mean that a party is precluded from filing an additional or supplemental petition, necessary, as in this case, for the preservation of what he may deem his rights, during the pendency of the original action, and to which he is forced by the act of the defendant himself. The petition in the present case, to be sure, does not pray that it may be cumulated with the prior suit, but that we consider does not impair the right of the plaintiff to have the conservatory order granted and damages allowed. Upon due proof the court might ex officio have ordered the two to be cumulated without prejudice to the interests of the parties litigant, and we shall leave that to its discretion."

And so it might have been said in the instant case, but that the appeal in the suit first instituted by plaintiff was allowed on

September 8, 1909, and this suit was not instituted until October 4th following, so that the cumulation was impracticable. It does not follow, however, that, where one asserts particular rights and obtains a judgment from which an appeal is taken, he is thereby precluded from the assertion of any other right thereafter arising from the same cause of action, because, by reason of such appeal, he is unable to cumulate the subsequent demand with that upon which the judgment was obtained; for, if that were so, a litigant in a petitory action with a judgment in his favor, suspended by appeal, might be cut off by the prescription of one year from recovering damages in the event of the defendant's denuding the land in controversy of its timber.

If the prohibition in the Code of Practice is not to be confined in its application to the bringing of suits in different courts "of concurrent jurisdiction," there is no reason why a litigant who has sued in one state should not be precluded from bringing a similar suit in another state.

It is, however, well settled that suits between the same parties arising from the same cause of action and for the same object may be prosecuted in different states at the same time. Godfrey v. Hall, 4 La. 158; Stone et al. v. Vincent, 6 Mart. (N. S.) 517. And the same rule has been applied to suits in the federal and state courts. In Hampton's Heirs v. Barrett, 9 La. 336, plaintiffs sought to recover two annual installments of interest on the price of a sugar plantation, and were met by the exception of lis pendens, predicated upon the fact that a previous suit had been brought and was then pending in the United States Court for prior installments, and that the defendant had there put at issue the validity of the sale and had asked that it be rescinded, on the ground that the vendor (plaintiff's ancestor) was without title to the thing sold. It was, however, held that the plea was not good, and the ruling of the lower court whereby it was maintained was reversed. In a later case, between the same parties (Hampton's Heirs v. Barrett, 12 La. 159), plaintiffs sued for another installment of interest, and were met with the same exception, which was again maintained by the trial court. But Martin, J., as the organ of this court, said:

"We are ignorant of any law which prevents a vendor in a sale, the price of which is paid in installments, from instituting a suit for each installment, as it becomes due. Our learned Brother doubts the correctness of a decision of the Supreme Court of the United States in which the federal and state courts are considered foreign to each other, and makes a distinction between the federal court which sits in the same state. He does not consider such a court as foreign to the courts of the same state. We consider ourselves bound by the decision of the Supreme Court of the United States, and are not ready to admit any distinction between the federal courts."

And the ruling of the trial court maintaining the exception of lis pendens was again reversed.

In Succession of Townsend, 37 La. Ann. 405, it appears that a rule had been taken to remove the executor, and that subsequently a suit had been instituted for the same purpose, and that the defendant had excepted to the rule, but had not pleaded lis pendens, and that he undertook to make that plea in this court. Bermudez, C. J., in passing upon the matter, said (page 409):

"The rule was taken on January 31, 1884, and the suit was brought on February 9th. The defendant in rule excepted on February 18th, but did not plead lis pendens. How can he do so here? The defense is a matter of plea; not one that can be raised in a brief. Even, then, how could lis pendens be pleaded in the first proceeding? How could it be set up against a proceeding in the same court? It rests on a proceeding previously instituted in a different court of concurrent jurisdiction. Even then the law provides that, when the plea is not made, the judgment first rendered is valid and executory against the party cast, and the proceedings in the other case shall be stayed and the suit dismissed. Code Prac. arts. 94, 335."

We therefore conclude that the exception of lis pendens, as pleaded in this case, has no

legal basis to rest on, and was improperly maintained. And it is accordingly ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the case be remanded to the district court, to be there proceeded with according to law and to the views expressed in the foregoing opinion, the costs of the appeal to be paid by the appellee, and those of the district court to await the final judgment.