(86 South. 598)

No. 24105.

**S. B. HICKS MOTOR CO., Inc., v. CALDWELL et al.**

**In re S. B. HICKS MOTOR CO., Inc.**

(Nov. 3, 1920.)

*(Syllabus by the Court.)*

Husband and wife ☞158—Married woman may, without husband's authority, bind herself and her property for debt of third person.

Under Act 94 of 1916, as amended and reenacted by Act 244 of 1918, a married woman may, without the authorization of husband, bind herself and her separate property for the debt of a third person (the question of her capacity to bind herself for the debt of her husband not being included in that finding, as not involved in this case).

Action by the S. B. Hicks Motor Company, Incorporated, against Mrs. C. M. Caldwell and others. Judgment for defendant was affirmed by the Court of Appeal, and plaintiff applies for writ of review. Judgment of Court of Appeal annulled, and case remanded, with directions.

Thigpen & Herold and C. Keller, all of Shreveport, for applicant.

Foster, Looney & Wilkinson, of Shreveport, for appellees.

MONROE, C. J. It appears in this case that J. E. Bailey bought an automobile from relator, in part payment for which he gave four notes of $250 each, indorsed by the defendant Mrs. Caldwell, and secured by a chattel mortgage. Being sued upon the notes, in solido with Bailey, Mrs. Caldwell filed an exception of no cause of action, based upon the ground that she is a married woman, not separate in property from her husband, and without capacity to bind herself by the contract sued on without his authorization. The trial judge maintained the exception, his judgment was affirmed by the Court of Appeal, Second Circuit, and the case has been brought to this court for a review of that ruling.

Prior to 1916, a married woman, with the authorization of her husband, was capable of binding herself and her separate estate for the debt of any one, other than her husband. Farrell v. Yoe, 2 La. Ann. 903; Roberts v. Wilkinson, 5 La. Ann. 379; Moussier v. Zunts, 14 La. Ann. 15; Bartington v. Bradley, 16 La. Ann. 310; Wickliffe v. Dawson, 19 La. Ann. 48; Hardin v. Wolfe & Cerf, 29 La. Ann. 335; Calhoun v. Bank, 30 La. Ann. 795; Hollingsworth v. Spanier, 32 La. Ann. 203; Bank of Lafayette v. Bruff,

33 La. Ann. 624; Stothart v. Hardie & Co., 110 La. 700, 34 South. 740.

By Act 94 of 1916 it was declared:

"Section 1. * * * That a married woman of this state shall be competent to contract and bind and otherwise obligate herself personally and with reference to her separate and paraphernal property, and to appear in court and to sue and be sued to the same extent and in the same manner as though she were a feme sole; provided, that nothing herein contained shall be deemed or construed to affect in any way the statutes of this state establishing and regulating the matrimonial community of acquets and gains and prescribing what shall be deemed community and what be deemed separate property of the spouses."

Section 2 repealed all conflicting laws.

By Act 244 of 1918 the "section 1" above quoted was amended and re-enacted so as to read (the amendatory language being herein italicized) as follows:

"Section 1. * * * That a married woman, *whether a resident of this state or not,* shall be competent to contract *debts, purchase, sell and mortgage, and to* bind and obligate herself personally [the word "and" as in the act of 1916 is here omitted], with reference to her separate and paraphernal property, and to appear in courts and to sue and be sued to the same extent and in the same manner as though she were a feme sole; provided, that nothing herein contained shall be deemed or construed to affect in any way the statutes of this state establishing and regulating the matrimonial community of acquets and gains, and prescribing what shall be deemed community and what shall be deemed separate property of the spouses."

Section 2 repeals all conflicting laws.

The opinion of the Court of Appeal reads, in part, as follows:

"It is said, in behalf of the plaintiff, that, under the first act, there could have been no question of the right of Mrs. Caldwell to sign the note sued on, without the authorization of her husband, because it authorized a married woman 'to contract and bind and obligate herself, personally *and* with reference to her separate and paraphernal property,' as if she were a feme sole. It is said, further, that the sole purpose of the amendment was to make the law applicable to married woman, both within and without the state. But this is not probable, for the reason that, if the Legislature had intended that change alone, it would simply have inserted the words 'whether a resident of this state or not,' and retained the rest of the act as it was originally written. The fact, that the word 'and,' in the third line, after the word 'personally,' in the first act, is omitted from the amendment, cannot well be accounted for except upon the theory that the Legislature recognized the probability, at least, of an interpretation which would enable a married woman to contract personal obligations and make contracts of a general character, as well as those relating to her separate property, and undertook, by the 1918 amendment, to make it clear that her powers, under the law, were restricted to matters having to do with her separate property. * * * We hold that the authority granted to married women by the acts under consideration, t sign contracts without being authorized by their husbands, relates exclusively to contracts with reference to their separate paraphernal property.".

We are unable to concur in the view thus expressed. As imprisonment for debt has been abolished, and as both the statutes here in question leave the property of the community, as it was before their enactment, equally beyond the control of the wife and the reach of her creditors, it is evident that, unless a married woman could be held liable, through her separate property, for debts contracted under the authority of the Act of 1916, a judgment against her would be as a tinkling cymbal and sounding brass—vox et preterea nihil; and, that being the case, it seems, at least, unlikely that she would be able to contract any debts. The inclusion of the word "and," to which our Brethren refer, in the Act of 1916, would therefore seem to us to have been a work of supererogation; and to have been so regarded by the author of the two statutes in question, and for that reason to have been omitted from the act of 1918.

In Tobin v. White, 142 La. 84, 76 South. 248, it was held (quoting the syllabus):

"By complying with the requirements of article 129 of the Civil Code, a married woman above the age of 21 years may renounce her paraphernal claims and legal mortgages against her husband, and make the renunciation general, in favor of any and all third parties."

In the course of the opinion, it was said:

"Although the plaintiff apparently does not rely upon Act 94 of 1916, that statute seems to free married women from the authority or controlling influence of their husbands, as to the right and competency of married women to contract and bind themselves personally and with reference to their separate or paraphernal property."

The Act of 1918 had not then become a law.

In Lorio v. Gladney (since decided) 147 La. 930, 86 South. 365, it was held:

"That the purpose and effect of the statute of 1916 was merely to permit a married woman to do, without the authorization of her husband, what she was theretofore capable of doing only with his authorization," and that "there was no intention of abrogating, and the statute has not abrogated, the relative incapacity of a married woman in dealings with her husband."

The dissent of the present writer in that case was directed against the matter contained in the paragraph last above quoted, concerning which no opinion is here called for or expressed.

For the reasons thus assigned, it is ordered and decreed that the judgment here made the subject of review, and that of the trial court, which is thereby affirmed, be annulled, that the exception of no cause of action be now overruled, and that the case be remanded to the district court, to be there proceeded with according to law and to the views herein expressed; the costs of the appeal and of this application to be paid by the defendant, and those of the district court to await the judgment on the merits.